UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-72-KSF

GUILLERMO HERRERA                                                    PLAINTIFF

v.                                      **OPINION & ORDER**

CHURCHILL MCGEE, LLC, *et al*.                                       DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion of the Defendants, Churchill

McGee, LLC ("Churchill McGee"), Nathan Churchill ("Churchill"), and Patrick McGee ("McGee"),

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the Plaintiff's

federal retaliation claim. This motion is fully briefed and is ripe for review. For the reasons set forth

below, the Defendants' motion for summary judgment will be granted.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This civil rights action arises out of the termination of Plaintiff's employment with the

Defendants. According to his complaint, Guillermo Herrera, an African-Cuban, was employed by

the Defendants, a residential and commercial construction company, and its owners, Nathan

Churchill and Patrick McGee, in June 2003 to perform masonry, tile, carpentry and general labor

work. During his employment at Churchill McGee, Herrera missed work on many occasions due

to incarceration. He was incarcerated for eleven days in October 2003, for forty-five days in

December 2003 through January 2004, eight days in September 2004, and three days in February

2008 [DE #64-26].  He also received "below average" rating for attitude, dependability, flexibility, initiative, and promptness in his annual performance review in December 2007 [DE #64-11].

Beginning on or around the middle of 2004, Herrera alleges that the Defendants began treating him differently from other white, non-Cuban employees.  Specifically, Herrera contends that the Defendants: (1) began taking money from his paycheck, ostensibly for cell phone over-usage, even though the Defendants knew or should have known that they were not entitled to the money they were withholding from his check; (2) required him to work overtime, but consistently refused to pay 150% of his hourly wage as required by applicable state and federal laws; (3) failed and refused to provide any medical benefits; (4) failed and refused to pay for life insurance; (5) required him to drive vehicles even though he informed them that he did not have a driver's license; and (6) paid him less money per hour to perform jobs virtually identical to, or substantially the same, as jobs performed by lessor experienced white, non-Cuban employees who had less seniority with Churchill McGee.  Herrera contends that he complained about his treatment to the Defendants in February and March 2008.

On March 13, 2008, Herrera was arrested and missed work for the fifth time during his employment at Churchill McGee.  He pled guilty to misdemeanor charges and was jailed for a week [DE #64-26].  When he attempted to return to work on March 22, 2008, Herrera was terminated by Nathan Churchill.  This termination was confirmed in writing on March 24, 2008.  According to the termination letter, McGee stated that Herrera was being fired "due to unsatisfactory attendance and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work" [DE #25-3].  Although there is no dispute that he missed five consecutive work days due to his incarceration, Herrera contends that

2

other white, non-Cuban employees missed time from work due to arrests or legal issues and were not fired.

After his termination, Herrera filed a complaint with the Lexington-Fayette Urban County Human Rights Commission ("HRC" or "the Commission") on April 4, 2008.  In his complaint, Herrera alleged that Churchill McGee both garnished his wages improperly and fired him on account of his race and national origin [DE # 27-10].  After investigating Herrera's claim, the Commission's investigator notified Herrera that she would be recommending that the Commission issue a no probable cause determination [DE #27-13].  Specifically, she concluded that "insufficient evidence exists to suggest you were treated differently with regards to your race or national origin." On July 31, 2008, the Commission notified Herrera that it would be dismissing his claim because it was "unable to conclude the information obtained establishes violation(s) of the statutes" [DE #27-12]. The Commission further notified Herrera "of his/her rights under the Commission's Rules of Practice and Procedure to apply for reconsideration in writing within twenty (20) days after the filing of this Determination."  Herrera did not apply for reconsideration.  On August 21, 2008, the Commission entered an Order of Dismissal stating as follows:

> A complaint having been filed by Guillermo Herrera alleging discrimination in employment by Respondent; An investigation having been made by the Human Rights Commission Staff; and No Probable Cause having been found; the Complaint is hereby dismissed.

[DE #8-7].  Although KRS 344.240 provides for judicial review of the Order of Dismissal in Fayette Circuit Court, Herrera did not seek judicial review of the Commission's decision.

Instead, Herrera filed this civil rights action in this Court on March 4, 2009 pursuant to 42 U.S.C. § 1981, 29 U.S.C. § 201, *et seq.*, 29 U.S.C. § 216(b), the Kentucky Civil Rights Act

3

("KCRA"), KRS 344.450, and the common law of Kentucky alleging unlawful discrimination and retaliation, failure to pay wages and overtime, fraud, and termination of employment in violation of public policy [DE #1]. The Defendants filed a motion for partial summary judgment on the pleadings in July 2009, seeking dismissal of Herrera's KCRA claim and state law wrongful discharge claim. This Court granted the Defendants' motion on the KCRA claim and dismissed this count on October 26, 2009, on the ground that the KCRA claim was barred by the KCRA's election-of-remedies provision, KRS 344.270, which provides as follows:

> The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before the commission. A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

Based on the last sentence of this statute, the Court held that Herrera was barred from bringing this civil rights lawsuit after unsuccessfully seeking relief on the same claims with the HRC. [DE #14]. At Herrera's request, the Court also dismissed his state law claim based on wrongful discharge [DE #14]. The parties have settled Herrera's claims based on the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. and Kentucky's Wage and Hour laws, KRS 337.020 *et seq*.

The parties subsequently filed cross-motions for summary judgment [DE #24 and #25] on Herrera's remaining claims of discrimination and retaliation based on 42 U.S.C. § 1981 and state law claims based on fraud and for punitive damages. The Court granted the Defendants' motion for summary judgment, holding that the doctrine of administrative preclusion barred relitigating these

4

claims because the Commission had already considered and rejected Herrera's administrative claims. The Court declined to exercise supplemental jurisdiction over Herrera's state law claims and dismissed those claims without prejudice [DE #48]. Herrera appealed to the Sixth Circuit Court of Appeals [DE #50].

Upon review, the Sixth Circuit affirmed the dismissal of Herrera's state-law claims and federal-law discrimination claim. However, the Sixth Circuit held that because the Commission did not adjudicate Herrera's federal retaliation claim, Kentucky courts would not give preclusive effect based on issue preclusion to the Commission's no-probable-cause determination in a subsequent retaliation suit. The Sixth Circuit, however, declined to decide whether Herrera's retaliation claim was barred by claim preclusion, noting that the federal courts are split on this issue and the parties did not brief this matter. The Sixth Circuit also declined to rule on the merits of Herrera's retaliation claim, and remanded the matter to this Court to consider this claim [DE #56].

On remand, the Defendants have submitted their motion for summary judgment [DE #64]. They seek dismissal both on the merits, and alternatively, seek for the first time to apply an administrative claim preclusion to Herrera's retaliation claims. Herrera opposes the Defendants' motion [DE #71].

## II.    ANALYSIS

### A.    SUMMARY JUDGMENT STANDARD

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to the record or "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). With these principles in mind, the Court turns first to the issue of whether Herrera's retaliation claim is barred by the doctrine of claim preclusion.

6

B.     **CLAIM PRECLUSION**

The Sixth Circuit has determined that Herrera's retaliation claim is not barred by the doctrine of issue preclusion because Herrera did not raise the issue of retaliation before the Commission. However, the Sixth Circuit declined to decide whether Herrera's retaliation claim is barred by the doctrine of claim preclusion because this issue had not been fully briefed. The Sixth Circuit further noted that the federal courts of appeals are split as to whether unreviewed state administrative decisions should have claim preclusive effect [DE # 56, p.17].

Claim preclusion bars a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or could have been raised in a prior action. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994). In discussing the difference between issue preclusion and claim preclusion, the Supreme Court has stated as follows:

> [t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing litigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Migra v. Warrent City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984)(citations omitted).

While the Full Faith and Credit Statute, 28 U.S.C. § 1738, obligates federal courts to apply state preclusion rules to determine whether a prior state court judgment has either issue or claim preclusive effect, it only covers prior judgments of state courts. It does not apply to prior state administrative decisions that have not been judicially reviewed by state courts. *University of*

*Tennessee v. Elliott*, 478 U.S. 788, 794 (1986).  Instead, federal courts must apply federal common law to determine what, if any, claim preclusive effect is to be accorded unreviewed state administrative decisions.  In *Elliott*, the Supreme Court determined the traditional principles of issue preclusion required federal courts to give a state administrative agency's factfindings the same issue preclusive effect it would receive in the state's own courts.  *Elliott*, 478 U.S. at 799.  However, the Supreme Court has not decided whether traditional preclusion principles require a similar rule for claim preclusion.

As noted by the Sixth Circuit, the federal courts are split as to whether to apply claim preclusion to unreviewed administrative decisions.  *Compare Plough v. West Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 n.6 (8th Cir. 1995)(claim preclusion), with *Dionne v. Mayor & City Council of Baltimore*, 40 F.3d 677, 684-85 (4th Cir. 1994)(no claim preclusion) and *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1064-65 & n. 21 (11th Cir. 1987)(same); *see also Hitt v. Connell*, 301 F.3d 240, 247 n. 3 (5th Cir. 2002).  The Sixth Circuit has not spoken on this issue.  After carefully considering the issue, this Court determines that the Eleventh Circuit's opinion in *Gjellum v. City of Birmingham, Alabama*, 829 F.2d 1056 (11th Cir. 1987), is most persuasive.  There, the court held that under federal common-law preclusion principles, the unreviewed state administrative agency decision did not have claim preclusive effect in a subsequent suit pursuant to 42 U.S.C. § 1983 even though the later suit arose out of the same transaction or series of transactions.  As noted by the Fourth Circuit in *Dionne v. Mayor & City Council of Baltimore*, 40 F.3d 677, 683 (4th Cir. 1994), "claim preclusion is the much more drastic doctrine" as compared to issue preclusion.  Because of its drastic effect, a critical prerequisite for applying claim preclusion is that the claimant have a fair opportunity to advance all its "same transaction" claims in a single unitary proceeding.

8

In this case, the administrative proceeding conducted by the Commission was one of quite limited substantive scope. Herrera proceeded in a *pro se* capacity. No hearing was conducted. Moreover, the Commission did not set forth any findings of fact. While it did affirm Herrera's termination, there are no specific findings of fact upon which this Court can give preclusive effect. Under these circumstances, the Court declines to apply claim preclusion to Herrera's retaliation claim.

### C.    RETALIATION

The Court now turns to the merits of Herrera's retaliation claim. Herrera alleges that he was subject to retaliation as a result of complaints made about his treatment allegedly due to his race and national origin in violation of 42 U.S.C. § 1981. This statute prohibits, *inter alia*, an employer from retaliating against an employee for engaging in protected activity. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). A plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). Herrera does not set forth any direct evidence of retaliation, such as an explicit statement that he was terminated due to his race or national origin. Such evidence, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the challenged action on the part of the defendants. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

Because Herrera's claims are based on circumstantial evidence, this matter is analyzed under the same McDonnell Douglas/Burdine evidentiary framework that is used to assess claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.. Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)(applying *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 247, 1981), *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000). Under this framework, in order to make a prima facie case of retaliation, Herrera must show that (1) he engaged in protected activity, (2) the activity was known to the Defendants, (3) he was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action. *Harris v. Metro Gov. of Nashville & Davidson County, Tenn.*, 594 F.3d 476, 485 (6th Cir 2010). If Herrera can satisfy these elements, then the burden of production shifts to the Defendants to articulate some legitimate, nondiscriminatory reason for their actions. If the Defendants satisfy this burden, then Herrera must demonstrate that their proffered reason was false.

Herrera has satisfied the first two elements of his prima facie case. Protected activity, as defined in Title VII, provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). While there is no evidence that Herrera filed any formal complaint prior to his termination, he makes the following allegation about complaining to the defendants:

> In or around February 2008, Plaintiff complained to Defendants Churchill and McGee about improper withholding from his check and his failure to receive insurance or pay and benefits similar to what the white, non-Cuban employees were receiving. Sometime prior to his termination, Plaintiff called the Lexington Fayette County Human Rights Commission and the Kentucky Labor Cabinet and its offices and complained about the discriminatory and unlawful treatment. On or about March 23, 2008, after becoming aware of Plaintiff's complaints about the discriminatory and unlawful treatment described above, the Defendants terminated Plaintiff's employment.

10

[DE #25-2, p.5]. Herrera also relies on the affidavit of Geoff Hampton, who recalls that Herrera began complaining about the way he was being treated compared to other white employees about 4 months before he was terminated [DE #28-1]. While the Defendants forcefully argue that they had no knowledge of Herrera's claim of disparate treatment before his firing, the Court finds that Herrera's statement, when coupled with Hampton's affidavit, suffices to establish the first two elements of a prima facie case.

As to the third element of a prima facie case, there is no dispute but that Herrera's firing amounts to a materially adverse action. The remaining issue, then, is whether there was a causal connection between the protected activity and the adverse action. This is where Herrera's claim fails.

In order to satisfy this fourth prong of the prima facie case requirement, Herrera must show a causal connection between the protected activity and the adverse action. However, temporal proximity alone will not support a claim of retaliation. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). Rather, a causal connection may be shown by "demonstrating that the adverse action was taken shortly after the plaintiff filed the complaint and by showing that he was treated differently from other employees." *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). While there is proximity between his alleged complaints to the Defendants and his termination, Herrera is unable to show that he was treated any differently than other employees.

In Herrera's termination letter, Defendant McGee stated that Herrera was being fired "due to unsatisfactory attendance and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work." [DE #25-3, Termination Letter]. The record is replete with evidence that Herrera missed work entirely, arrived at work late, and/or left work early on fourteen separate occasions in the two-and-

11

one-half months immediately preceding the absences, arrest, and detention that ultimately triggered his termination [DE 64-28].  Herrera has failed to come forward with any evidence that other employees with similar attendance issues were treated differently.  As the Defendants point out, both Aaron Jones and Josh Hale, both white Americans employed as  carpenters, were terminated after arrests and incarcerations [DE # 64-7].  Another employee, Alan Krasinski, a white American employed as a carpenter, was also terminated after his arrest and incarceration [DE #64-7, #64-8].  Although he was eventually rehired, the Defendants point out that his performance reviews were markedly better than Herrera's and that Krasinski had not previously been arrested or missed any work due to an arrest during his time at Churchill McGee.  Moreover, the HRC also found that the Defendants "treated other employees in the same or similar manner with regard to terminations. . . The investigation reveals that they have [] terminated black, white, and Latino employees for the same or similar reasons that you were terminated" [DE #24-25].  Accordingly, the Court finds that Herrera has failed to show a causal connection between his alleged complaints and his termination.

Finally, even if Herrera had produced evidence to support his prima facie case of retaliation, he has produced no evidence to suggest that the Defendants' reasoning for his termination was merely pretext.  In order to prove a defendant's explanation is not credible, a plaintiff must demonstrate that the "proffered reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action." *Harris v. Metro. Gov. of Nashville & Davidson County, Tenn.* 594 F.3d 476, 485 (6th Cir. 2010).  Importantly, to prove pretext, Herrera must show "both that the reason was false, and that discrimination or retaliation was the real reason." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  Herrera's absenteeism alone would give any employer reasonable grounds for termination.  Thus,

12

there is no evidence that the reason for his termination - incarceration and absenteeism - was false. Additionally, Herrera cannot show that discrimination was the real reason for his termination as other non-minority employees were treated similarly.  Thus, Herrera's retaliation claims fail and the Defendants's motion for summary judgment will be granted.

## IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)     the Defendants' motion for summary judgment [DE #64] is **GRANTED**;

(2)     Herrera's federal retaliation claims are **DISMISSED WITH PREJUDICE**; and

(3)     a judgment consistent with this Opinion & Order will be entered contemporaneously herewith.

This January 18, 2013.



**Signed By:**

***Karl S. Forester***  $K S F$

**United States Senior Judge**